UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOYCE JOHNSON, et al., | ) | |
| | ) | |
| On Behalf of Herself and | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| v. | ) | Case No. 11-0981-CV-W-DGK |
| | ) | |
| MFA PETROLEUM CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DISMISSING CASE

This case is a class action brought by Plaintiff Joyce Johnson, on behalf of herself and all others similarly situated, against Defendant MFA Petroleum Company ("MFA"), Casey's General Stores, Inc. ("Casey's"), and QuikTrip Corporation ("QuikTrip"). Pending before the Court are the following motions: Plaintiff's "Motion for Remand" (Doc. 15), Defendants' "Suggestions in Opposition to Plaintiff's Motion to Remand" (Doc. 29), Plaintiff's "Reply Suggestions in Support of Motion for Remand" (Doc. 36); Defendants' "Motion to Dismiss" (Doc. 12), Plaintiff's "Suggestions in Opposition to Defendants' Motion to Dismiss" (Doc. 32), Defendants' "Reply in Support of Motion to Dismiss" (Doc. 37); Defendant QuikTrip's "Motion to Sever and Suggestions in Support" (Doc. 30), Defendant Casey's "Joinder in QuikTrip Corporation's Motion to Sever and Suggestions in Support" (Doc. 31), Plaintiff's "Suggestions in Opposition to Defendant QuikTrip's Motion to Sever Claims" (Doc. 35), and Defendants Casey's and QuikTrip's "Reply Suggestions in Support of Motion to Sever" (Doc. 38).

For the following reasons, Plaintiff's "Motion to Remand" (Doc. 15) is denied and Defendant's "Motion to Dismiss" (Doc. 12) is GRANTED.

## Background

On August 22, 2011, Plaintiff Joyce Johnson, a citizen of the state of Missouri, filed a Petition for Damages in the Circuit Court of Jackson County, Missouri against Defendants MFA Petroleum Company, Casey's General Stores, Inc., and QuikTrip Corporation. In the Petition, Plaintiff, on behalf of herself and a putative class of Missouri consumers, alleged that each Defendant owns and operates retail gas stations in Missouri that sell and dispense gasoline through "single hose blender pumps" which distribute multiple grades of gasoline (e.g., unleaded, unleaded plus, premium unleaded) through a single hose. Because these pumps dispense different grades through one hose, Plaintiff argues that each time a purchaser pumps gas there is a residual amount of gasoline remaining in the hose from the previous purchaser. Accordingly, if an individual purchases a grade of gasoline higher than the previous purchaser, she actually receives a quantity of the lower grade gasoline as well. Plaintiff's complaint seeks money damages and injunctive relief relating to transactions involving Defendants' single-hose blender gasoline pumps.

Plaintiff seeks remand of this case to the Circuit Court of Jackson County, Missouri, arguing that this Court does not have jurisdiction to hear the case under either its diversity jurisdiction or its federal question jurisdiction. Defendants argue that this Court has federal question jurisdiction and argues that the case should be dismissed because Plaintiff's claim is expressly preempted by both Missouri law and federal law. In the alternative, Defendants argue that they are entitled to a safe harbor from liability because at all relevant times they have complied with State of Missouri requirements for gas pumping and pricing.

**Standard**

A. **Federal Jurisdiction**

An action may be removed by the defendant where the case falls within the original jurisdiction of the district courts. 28 U.S.C. § 1441(a). If the case is not within the original subject matter jurisdiction of the district court, the court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction is on the party seeking removal. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). All doubts are resolved in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

Federal question jurisdiction exists when the "action arise[s] under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," courts will examine the face of the complaint to determine whether any claim arises under federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Where a plaintiff asserts only state law claims, federal courts do not have jurisdiction unless determination of a substantial and disputed question of federal law is necessary. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983); *McNeill v. Franke*, 171 F.3d 561, 564 (8th Cir. 1999). "Defendants are not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Central Iowa Power Co-op v. Midwest Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (internal citations omitted).

B. **Preemption**

"The complete preemption doctrine holds that when Congress intends the preemptive force of a statute to be so extraordinary that it completely preempts an area of state law, any

claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Strong v. Telectronics Pacing Sys. Inc*., 78 F.3d 256 (6th Cir. 1996), quoting *Caterpillar*, 482 U.S. at 393 (internal citations omitted). Thus, "if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Board*, 463 U.S. at 24.

## Discussion

### A. The Petroleum Marketing Practices Act preempts Plaintiff's claims.

Defendants' first ground for removal is federal question jurisdiction. 28 U.S.C. § 1331. Defendant argues that Plaintiff's Missouri Merchandising Practices Act ("MMPA") claim is preempted by the Petroleum Marketing Practices Act ("PMPA"), therefore, giving rise to federal question jurisdiction in this Court.

Plaintiff, on the other hand, argues that jurisdiction is improper in this Court because she did not assert any federal claims in her Petition for damages. Rather, Plaintiff maintains that she has properly brought this case pursuant to the MMPA, and that the Court should "reject the Defendants' attempt to redefine the Plaintiff's MMPA claim in order to create federal question jurisdiction."

The federal Petroleum Marketing Practices Act regulates the testing and disclosure of motor fuel octane. *See* 15 U.S.C. §§ 2821-2824. The PMPA is divided into three subchapters. Subchapter I addresses the petroleum franchise relationship. Subchapter II addresses the testing, certification, labeling, and disclosure of a gasoline's octane rating. Subchapter III addresses the subsidization of motor fuel marketing. Subchapter II is the relevant section of the PMPA for purposes of Plaintiff's claim in this case.

4

The PMPA requires the Federal Trade Commission ("FTC") to adopt rules to regulate octane disclosures. *See* 16 C.F.R. § 306.1 et seq. Pursuant to this delegation, the FTC has implemented a regulation requiring retailers to "post the automotive fuel rating of all automotive fuel [they] sell to consumers."[1] 16 C.F.R. § 306.10(a). This rule also contains detailed requirements for labeling or marketing a gasoline's octane or fuel rating, dictating the color, dimensions, and font for all labels. 16 C.F.R. § 306.12. In addition, the regulation provides that "[n]o marks or information other than that called for by this rule may appear on the labels." 16 C.F.R. § 306.12. The regulations apply to single-hose blender pumps, like the pumps at issue in this litigation. 16. C.F.R. § 206.10.

The PMPA also contains preemption provisions, preempting different or additional state requirements that are not "the same as" federal requirements. 15 U.S.C. § 2824(a). For example, Subchapter I of the PMPA contains a preemption provision stating that:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a)(1).

The preemptory language of Subchapter II is broader, providing that:

> To the extent that any provision of this subchapter applies to *any action or omission*, no State or any political subdivision thereof may adopt or continue in effect, except as provided in subsection (b) of this section,

---

[1] For gasoline, automotive fuel rating, as defined by 15 U.S.C. § 306.0(j), is the gasoline's octane rating. Octane rating is defined as "the rating of the anti-knock characteristics of a grade or type of gasoline as determined by dividing by 2 the sum of the research octane number plus the motor octane number."

> any provision of law or regulation with respect to such act or omission, unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2824 (emphasis added).

No court has considered whether § 2824 completely preempts state law claims. Some courts, however, have held that § 2806 completely preempts state law claims and supports removal jurisdiction. *See C.A.L.L. Group, Inc. v. Exxon Mobil Corp.*, No. 08-CV-391-PB, 2009 WL 2513604 (D.N.H. Aug. 14, 2009); *Mehdi-Kashi v. Exxon Mobil Corp.*, No. Civ.A. H–01–719, 2002 WL 32052603 (S.D. Tex. Jan. 7, 2002). Accordingly, Plaintiff argues her MMPA claim is not preempted because the PMPA only has complete preemption when dealing with legal claims involving franchise agreements under Subchapter I.

As is clear from the statute, however, the preemption language in Subchapter I is more limited, applying only to the termination or nonrenewal of a franchise, whereas the preemption language in Subchapter II is broad, applying to any act or omission governed by that subchapter. Thus, while no court has expressly considered the issue, common sense dictates that if § 2806 provides for complete preemption, the broader § 2824 would as well. Additionally, although the Eighth Circuit has not specifically addressed the issue of § 2824 preemption, it has recognized the broad preemptive effect of the language used in § 2806. *Cont'l Enters., Inc. v. Am. Oil Co.*, 808 F.2d 24 (8th Cir. 1986).

The 9th Circuit's decision in *Alvarez v. Chevron Corp.* is the only federal circuit decision interpreting the preemptive effect of Subchapter II of the PMPA. 656 F.3d 925 (9th Cir. 2011). In that case, plaintiffs brought a putative class action "alleging that [d]efendants fail[ed] to deliver 100 percent of the fuel at the octane rating advertised when [p]laintiffs purchase[d] fuel at a higher octane rating than the previous customer at a single-nozzle pump." *Alvarez v.*

*Chevron Corp.*, No CV 09-3343-GHK, 2009 WL 5552497, at *1 (C.D. Cal. Sept. 30, 2009). As such, premium grade purchasers argued that they were overcharged when the prior customer had purchased mid-range or regular grade fuel and sought monetary damages in addition to the development of a more accurate dispenser and pricing technology.

The *Alvarez* plaintiffs based their case on a variety of state common law claims in addition to statutory claims under the California Consumer Legal Remedies Act, the California Unfair Competition Law, and the California False Advertising Law. *Id.* at *2. Plaintiffs argued that they were not requesting any modification of the octane rating labels but rather sought "additional disclosure on a separate label . . . inform[ing] consumers of the 'residual fuel' issue." *Id.*, at *4. The district court dismissed plaintiffs' claim under California's False Advertising Law holding that it was preempted by the PMPA: "As the PMPA and Posting Rule make clear that they constitute the exclusive regime for the certification and posting of octane labels, we cannot require Defendants to disclose more information than is expressly required by these provisions." *Id.*

The Ninth Circuit affirmed, noting that the PMPA contains a "broad preemption against state and local laws and regulations addressing any acts or omissions covered by the PMPA." *Alvarez*, 656 F.3d at 934. In its decision, the court explained:

> Plaintiffs' intended disclosure remedy is designed to warn customers at the point of sale that the grade of fuel they purchase may or may not actually be delivered, regardless of its posted fuel grade. This notice would have the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations promulgated by the FTC.

*Id.* at 935. The court further noted that "[t]o the extent Plaintiffs' other statutory claims seek *relief* that would require a corrective disclosure at the point of sale, we conclude that they are also preempted by federal law." *Id.* at 935, n.11.

Plaintiff argues that this case is distinguishable from *Alvarez* and that the PMPA does not preempt her claims here because she "neither challenges the Defendants' existing signage regarding octane ratings nor requests any corrective signage be posted regarding said ratings" (Doc. 16).  Plaintiff also argues that case law supports preemption only regarding inaccurate signage with regard to minimum octane ratings.  Because Plaintiff's claim surrounds the "grade/brand" of gasoline unrelated to octane, and because Plaintiff does not mention the word "octane" anywhere in her Complaint, Plaintiff argues that PMPA preemption does not apply.

As a conceptual matter, the Court finds that Plaintiff's purported distinction between a gasoline's "grade" and its octane rating is a red herring.  Although Plaintiff categorizes her claims as alleging misrepresentations of the quantity of gasoline of a certain "grade/brand" (regular, mid-grade, and premium), the Court fails to see how this label is conceptually different from octane levels.  Furthermore, courts often find that a gasoline's "grade" is synonymous with its octane rating.  *See, e.g.*, *Barnsdall Refineries v. Birnamwood Oil Co.*, 81 F.3d 569, 570 (7th Cir. 1936) (discussing various grades of gasoline by reference to their octane ratings); *Shell Petroleum Corp. v. Victor Gasoline Co.*, 84 F.2d 676 (10th Cir. 1936) (noting how different gasoline grades are delineated according to octane levels); *Texaco, Inc. v. Ingram Barge Co.*, 423 F. Supp. 676 (E.D. Mo. 1976) (referencing grades in terms of octane levels).  Accordingly, Plaintiff's word choice is not conclusive on the issue of whether the PMPA preempts Plaintiff's claims.

In addition, Plaintiff's Complaint here seeks similar relief to the *Alvarez* plaintiffs.  In her complaint, for example, Plaintiff seeks monetary relief and "injunctive relief, including an Order suspending all misrepresentations by all Defendants regarding the brand and quantity of the higher grade gasoline." (Doc. 1, Exhibit A).  Elsewhere in the Complaint, Plaintiff notes that

"Defendants act, use, or employ deceptive, fraudulent, false pretense, false promise, misrepresentation, unfair practice, or conceal, suppress, or omit material facts in connection with the sale and marketing of their higher grades of gasoline with respect to Secondary Consumers in violation of the Missouri Merchandising Practices Act" (Doc. 1, Exhibit A). Plaintiff also argues that Defendants fail to warn customers "that they are receiving a certain amount of lower grade gasoline although they are paying for that gasoline at a higher grade rate." *Id.* Plaintiff goes on to state that "Defendants further deceived Secondary Customers with false and misleading advertising regarding the quantity and brand of higher grades of gasoline when purchased immediately following purchasers of a lower grade of gasoline at their 'single hose blender pumps.'" *Id.* Finally, Plaintiff maintains that "[t]hrough advertising and selling at the point of sale, the Defendants have perpetrated the practice of inaccurately representing the brand and quantity of higher grade gasoline being purchased by Secondary Consumers." *Id.*

Accordingly, the Court fails to understand how Plaintiff's claim here is distinct from plaintiffs' claim in *Alvarez*. Although Plaintiff argues that she is not alleging that Defendants have "false advertisements or make false representations of their octane ratings," she clearly seeks relief to correct such false and misleading representations. Therefore, her assertions and her request for relief are inconsistent.

Plaintiff's final argument tries to recharacterize her claim as an attack on the trademarks or trade names of Defendants' fuel, bringing it within the exception provided by 15 U.S.C. § 2282(g)(1), (2) for the representation of fuel characteristics other than automotive fuel ratings. However, as the Court in *Alvarez* correctly noted, "neither of these exemptions applies to the disclosure requirements Plaintiffs ask us to impose." *Alvarez*, 2009 WL 5552497, at *5. Plaintiff offers no support for her argument that the representations at issue in this case are the

9
Case 4:11-cv-00981-DGK   Document 41   Filed 02/15/12   Page 9 of 11

"identification of automotive fuel at the point of sale (or elsewhere) by the trademark, trade name, or other identifying symbol or mark" and the Court can find no other evidence that the alleged brand/grade misrepresentations refer to anything other than octane or automotive fuel ratings. 15 U.S.C. § 2282(g)(2).

Accordingly, because, like the plaintiffs in *Alvarez*, Plaintiff's requested injunctive relief would "have the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations," the Court finds that the PMPA preempts Plaintiff's claim. *Alvarez*, 2011 WL 3850660, at *7.

### B. The Court declines to determine whether it has jurisdiction under the Class Action Fairness Act.

Plaintiff also argues that the Court decline jurisdiction under the Class Action Fairness Act ("CAFA") because Plaintiff meets the local controversy exception. Because the Court finds that it has federal question jurisdiction over the case based on the PMPA, the Court declines to reach this issue.

### C. The Court must dismiss Plaintiff's claim.

Defendant seeks dismissal of Plaintiff's case arguing that is preempted by both Missouri law and federal law or that in the alternative, Defendants should be afforded a safe harbor from liability because the conduct Plaintiff challenges is mandated by the State of Missouri. The Court has already held that Plaintiff's claim is preempted by the federal PMPA, thus the case must be dismissed.

## Conclusion

Subchapter II of the PMPA occupies the field of testing, certifying, labeling, and displaying the octane rating of gasoline. Because Plaintiff's claim seeks modification of the

labeling and display of octane ratings of gasoline, the Court finds that the PMPA preempts Plaintiff's claim.  Plaintiff's Motion to Remand (Doc. 15) is DENIED and Defendant's Motion to Dismiss (Doc. 12) is GRANTED.  The case is dismissed without prejudice.

**IT IS SO ORDERED.**

Date: February 15, 2012                                         /s/ Greg Kays
                                                                GREG KAYS, JUDGE
                                                                UNITED STATES DISTRICT COURT