# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| JOYCE A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:11-cv-00981-DGK |
| | ) | |
| MFA PETROLEUM COMPANY, | ) | |
| CASEY'S GENERAL STORES, INC., and | ) | |
| QUIKTRIP CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This case is a putative class action brought by Plaintiff Joyce Johnson against Defendants MFA Petroleum Company ("MFA"), Casey's General Stores, Inc. ("Casey's"), and QuikTrip Corporation ("QuikTrip"). Plaintiff alleges that Defendants used false advertising and material misrepresentations in the sale of gasoline to Missouri consumers, in violation of the Missouri Merchandising Practice Act ("MMPA"), Mo. Rev. Stat. § 407.020.

Now before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 63). Because Plaintiff's claims are expressly and impliedly preempted by the federal Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2821-2824, the Court GRANTS Defendants' motion.

**Background**

On August 22, 2011, named Plaintiff Joyce Johnson, a Missouri citizen, filed a one-count lawsuit in the Circuit Court of Jackson County, Missouri alleging Defendants violated the MMPA. The MMPA is state consumer protection statute making it unlawful to use or employ "any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice," or to

conceal, suppress, or omit "any material fact in connection with the sale or the advertisement of any merchandise in trade or commerce. . ." Mo. Rev. Stat. § 407.020.1.

Plaintiff's complaint (the "Complaint") alleges Defendants own and operate retail gas stations in Missouri that dispense gasoline through "single hose blender pumps," that is, pumps which distribute multiple grades of gasoline (*e.g.*, unleaded, unleaded plus, premium unleaded) through a single hose. Plaintiff contends that because these pumps dispense different grades through a single hose, each time a purchaser begins to pump gas there is a residual amount of gasoline remaining in the hose from the previous purchaser. If an individual purchases a grade of gasoline higher than the previous purchaser, then she actually receives a small quantity of the lower grade gasoline as well. Plaintiff seeks money damages and injunctive relief on behalf of a class of Missouri consumers who purchased higher grade gasoline at one of Defendant's retail gas stations.

Defendants removed the action from the Circuit Court of Jackson Count to this Court, alleging jurisdiction under both the Court's federal question jurisdiction and diversity jurisdiction, 28 U.S.C. §§ 1331, 1332, 1441. Plaintiff moved for remand, arguing neither basis for federal jurisdiction existed (Doc. 16). The Court ultimately exercised jurisdiction over the action based on complete preemption and granted Defendants' motion to dismiss (Doc. 41). The Eighth Circuit reversed the Court's finding of complete preemption and remanded for a determination of whether diversity jurisdiction existed under the Class Action Fairness Act ("CAFA"). *Johnson v. MFA Petroleum Co.*, 701 F.3d 243 (8th Cir. 2012).[1] On remand, the Court determined it possessed jurisdiction under CAFA (Doc. 58). Defendants then filed the

---

[1] In so holding, the Eighth Circuit distinguished between the doctrine of ordinary preemption—a federal defense—and complete preemption, which is a basis for federal court jurisdiction. *Johnson*, 701 F.3d at 248. Although the court held that the PMPA did not completely preempt Plaintiff's MMPA claim, it opined that Plaintiff may not "ultimately prevail over a preemption defense on her underlying claim." *Id.* at 253.

instant motion (Doc. 63), arguing that the PMPA expressly and impliedly preempts Plaintiff's MMPA claim.

## Standard

**A. The standard of review for judgment on the pleadings.**

After the pleadings have closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, the court must "accept as true all factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citation omitted). Much like the court's review under Rule 12(b)(6), "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law…." *Id.* (internal quotation marks and citation omitted). Accordingly, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted).

**B. The standard of review for preemption.**

Any state law that conflicts with any federal statute or duly authorized federal regulation is preempted under the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2; *City of New York v. F.C.C.*, 486 U.S. 57, 63-64 (1988). A federal law may either expressly or impliedly preempt a state law. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). A federal law expressly preempts a state law when the statutory language clearly evinces an intent to do so. *Id.* Implied preemption occurs when the scope of the federal "statute indicated Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state

and federal law." *Id.* at 76-77.

Under either form of preemption, congressional intent "is the ultimate touchtone." *Id.* at 76. In all preemption cases, the inquiry "start[s] with assumption that the historic police powers of the States were not superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks and citations omitted). With these principles in mind, the Court analyzes whether the PMPA either expressly or impliedly preempts Plaintiff's claims.

## Discussion

### I. The PMPA expressly preempts Plaintiff's MMPA claim.

Defendants' first argument is that the PMPA and attendant Federal Trade Commission ("FTC") Automotive Fuel Rating ("AFR") regulations expressly preempt Plaintiff's MMPA claim. Defendants contend that Section 2824(a) of the PMPA and Section 306.4 of the AFR regulations contain broad preemptive language which encompasses Plaintiff's MMPA claim. Plaintiff counters that, as plead, her claim clearly avoids the preemptive scope of these provisions. After carefully reviewing Plaintiff's complaint as a whole, the Court holds that the PMPA and AFR regulations expressly preempt Plaintiff's MMPA claim.

**A. The PMPA and AFR regulations preempt state law causes of action relating to octane disclosure which are not identical to those in the PMPA.**

To determine the preemptive scope of an express statutory provision, the Court must interpret the language in light of Congress' intent. *Altria Grp.*, 555 U.S. at 76. Thus, the starting point for the Court's analysis is the PMPA and the regulations promulgated pursuant to it.

In 1978, Congress enacted Subchapter II of the PMPA in order to regulate the testing and disclosure of automotive fuel ratings. 15 U.S.C. §§ 2821-2824. This subchapter instituted comprehensive certification and posting requirements for the octane labeling on gasoline pumps. 15 U.S.C. § 2822. The avowed purpose behind this subchapter was "to ensure that purchasers have

4

the information they need to purchase gasoline with sufficient octane to prevent engine knocking while avoiding wasteful octane overbuying." Automotive Fuel Ratings, Certification and Posting, 58 Fed. Reg. 41,356 (Aug. 3, 1993). In this same vein, Congress amended the PMPA in 1992 to provide consumers with the "information they need to choose the correct type or grade of fuel for their vehicles," *id.*, and to "provide the state more authority to enforce octane posting requirements." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1080 (E.D. Cal. 2009) (quoting H.R. Rep. No. 102-474(I), at 151 (1992), *as reprinted in* 1992 U.S.C.C.A.N. 1954, 1974).

To accomplish these goals, the PMPA required the FTC to adopt rules regulating octane disclosures. *See* 16 C.F.R. § 306.1, *et seq*. Pursuant to this delegation, the FTC promulgated the AFR regulations requiring retailers to "post the automotive fuel rating of all automotive fuel [they] sell to consumers."[2] *Id.* § 306.10(a). Section 306.12 of these regulations provides detailed requirements for labeling or marketing a gasoline's octane or fuel rating, including rules dictating the color, dimensions, and font for all labels. *Id.* § 306.12. It also provides that "[n]o marks or information other than that called for by this rule may appear on the labels." *Id.* The regulations apply to single-hose blender pumps, like those at issue in this litigation. *Id.* § 306.10.

The PMPA also contains a broadly-worded preemption provision, preempting state requirements that are not "the same as" federal requirements. 15 U.S.C. § 2824(a). In relevant part, this provision states:

> (a) To the extent that any provision of this subchapter applies to any action or omission, no State or any political subdivision thereof may adopt or continue in effect, except as provided in subsection (b) of this section, any provision of law or regulation with respect to such act or omission, unless such provision of such law or regulation is the

---

[2] For gasoline, automotive fuel rating, as defined by 16 C.F.R. § 306.0(j), is the gasoline's octane rating. Octane rating is defined as "the rating of the anti-knock characteristics of a grade or type of gasoline as determined by dividing by 2 the sum of the research octane number plus the motor octane number." 16 C.F.R. § 306(a).

> same as the applicable provision of this subchapter.
>
> (b) A State or political subdivision thereof may provide for any investigative or enforcement action, remedy, or penalty (including procedural actions necessary to carry out such investigative or enforcement actions, remedies, or penalties) with respect to any provision of law or regulation permitted by subsection (a) of this section.

15 U.S.C. § 2824 (a)-(b). The FTC explicitly incorporated this same preemption provision into the AFR regulations. 16 C.F.R. § 306.4.

### B. Three federal court decisions discuss the preemptive scope of the PMPA.

Only three published federal court decisions discuss the preemptive scope of Section 2824(a) of the PMPA and the AFR regulations.

In *VP Racing Fuels, Inc. v. General Petroleum Corporation*, the plaintiff, VP Racing Fuels, Incorporated ("VP") was a California gasoline distributor who sold street-legal 100 octane gasoline. 673 F. Supp. 2d at 1076. VP sued another California gasoline distributor, General Petroleum Corporation ("GPC"), for allegedly marketing and selling "Sunoco's 260 GT 100 Octane" racing fuel to retailers even though the gasoline only had a 97 octane rating. *Id.* at 1077. VP alleged that these actions violated the California Unfair Competition Law ("UCL"), the False Advertising provision of the California Business and Professions Code ("FAL"), and the federal Lanham Act. *Id*.

Defendant moved to dismiss the UCL and FAL claims, arguing that the PMPA expressly preempted both claims. With respect to the UCL claim, the district court found that the PMPA did not preempt it. *Id.* at 1082. The district court noted that the UCL adopted its unfair practice standards from the PMPA because the UCL was a borrowing statute—*i.e.*, a statute that "borrows violations of other laws and treats them as unlawful practices…." *Id*. at 1081. The district court reasoned that the PMPA did not preempt the UCL, because in this situation a violation of the UCL was also a violation of the PMPA, thus the UCL imposed requirements that

were the "same as" the PMPA. *Id.* at 1082.

The district court also rejected GPC's preemption argument concerning the FAL claim. The district court held that the PMPA did not preempt the FAL claim because each statute addressed distinct acts. *Id.* at 1082. The court held the FAL claim addressed the "act of *intentionally* misrepresenting the octane level that Plaintiff takes issue [with]," while the PMPA dealt with the certification and display of octane ratings. *Id.* (emphasis in original). And because "[t]he PMPA does not regulate *the act* of advertising petroleum products," there was no preemption. *Id*. at 1082-83 (emphasis in original).

*Alvarez v. Chevron Corporation* is the only analogous case to address the preemptive scope of 15 U.S.C. § 2824(a) and AFR regulations. In that case, plaintiffs brought a putative class action "alleging that [d]efendants fail[ed] to deliver 100 percent of the fuel at the octane rating advertised when [p]laintiffs purchase[d] fuel at a higher octane rating than the previous customer at a single-nozzle pump." *Alvarez v. Chevron Corp.*, No CV 09-3343-GHK, 2009 WL 5552497, at *1 (C.D. Cal. Sept. 30, 2009). Plaintiffs, premium grade fuel purchasers, argued that they were overcharged when the prior customer had purchased mid-range or regular grade fuel, and they sought monetary damages in addition to equitable relief of a more accurate dispenser and pricing technology.

The *Alvarez* plaintiffs based their case on a variety of state common law claims in addition to statutory claims under the California Consumer Legal Remedies Act (the "CLRA"), the California UCL, and the California FAL. *Id*. at *2. Plaintiffs argued that they were not requesting any modification of the octane rating labels but rather sought "additional disclosure on a separate label . . . inform[ing] consumers of the 'residual fuel' issue." *Id.*, at *5. The district court dismissed plaintiffs' claim under the FAL holding that it was preempted by the PMPA: "As the PMPA and Posting Rule make clear that they constitute the exclusive regime for

the certification and posting of octane labels, we cannot require Defendants to disclose more information than is expressly required by these provisions." *Id*.

The Ninth Circuit affirmed, noting that the PMPA contains a "broad preemption against state and local laws and regulations addressing any acts or omissions covered by the PMPA…." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 934 (9th Cir. 2011). The Ninth Circuit explained:

> Plaintiffs' intended disclosure remedy is designed to warn customers at the point of sale that the grade of fuel they purchase may or may not actually be delivered, regardless of its posted fuel grade. This notice would have the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations promulgated by the FTC.

*Id.* at 935. The Ninth Circuit also noted that "[t]o the extent Plaintiffs' other statutory claims seek *relief* that would require a corrective disclosure at the point of sale, we conclude that they are also preempted by federal law." *Id*. at 935, n.11 (emphasis in original).

With these decisions in mind, the Court turns to whether Plaintiff's particular MMPA claim is preempted by the PMPA.

### C. The PMPA preempts Plaintiff's MMPA claim because it attempts to impose octane disclosure requirements which are not identical to those in the PMPA.

To determine whether the PMPA preempts Plaintiff's MMPA claim, the court must carefully scrutinize the exact language of the PMPA's preemption provision. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (conducting a thorough analysis of the statutory language before concluding that the Airline Deregulation Act ("ADA") preempted a state consumer protection statute). As a threshold matter, the parties agree that the disclosure of octane ratings on the gasoline pump is an "act" governed by the PMPA, and the MMPA is a state "provision of law or regulation." *See* 15 U.S.C. § 2824(a). The parties dispute (1) whether Plaintiff's MMPA claim seeks to impose requirements "with respect to" octane disclosures or labeling, and if so, (2) whether the disclosure or labeling requirements Plaintiff seeks to impose

8

are "the same as" those under the PMPA.[3]

### 1. Plaintiff's MMPA claim seeks to impose octane disclosure requirements.

The PMPA preempts state law claims that impose requirements "with respect to" octane disclosures and labeling. "Respect" is defined as "a relation to or concern with something." Webster's Third New International Dictionary 1934 (2002). And the ordinary meaning of "related to" is "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with…." *Morales*, 504 U.S. at 383 (quoting Black's Law Dictionary 1158 (5th ed. 1979)). Since terms "with respect to" and "related to" are synonymous, the pertinent inquiry here is whether Plaintiff's MMPA claim has "a connection with" or "reference to" octane disclosures. *See id.* at 384 (holding that the words "related to" as used in the ADA preemption provision meant "a connection with" or "reference to").

Plaintiff contends her MMPA claim has no connection with or reference to octane disclosures because it only alleges that Defendants inaccurately represented the brand and quantity of higher grade gasoline consumers were purchasing. She argues the Complaint has no connection with octane disclosures because it never uses the word "octane," it only references "grades" or "brands" of gasoline—*i.e.*, "unleaded," "super unleaded," and "premium." Doc. 70 at 7-8.

Although Plaintiff has successfully avoided using the word "octane" anywhere in the Complaint, it does not change the fact that the essence of her MMPA claim is inextricably connected with octane disclosures or labeling. To begin, the Court notes there is no meaningful difference between a gasoline's "grade/brand" and its octane rating. A gasoline's grade/brand is

---

[3] In her Response in Opposition (Doc. 70), Plaintiff argued that her MMPA claim was explicitly authorized by Section 2822(g) of the PMPA. Plaintiff initially contended that her MMPA claim attacked the misleading use of trade names, and Section 2822(g) exempted trade names from the disclosure requirements under Subchapter II. Doc. 70 at 7-8. Therefore, Plaintiff reasoned, the MMPA explicitly authorized her lawsuit. *Id.* at 8. In her most recent briefing, however, Plaintiff withdrew this argument. *See* Doc. 75 at 18 ("After a thorough review of the legislative history behind Subchapter II as requested by this Court it has become clear to Plaintiff that § 2822(g) has limited application to [the express] preemption analysis."). Accordingly, the Court need not address this contention.

indistinguishable from octane levels; its "grade" is synonymous with its octane rating. *See, e.g.*, *Barnsdall Refineries v. Birnamwood Oil Co.*, 81 F.2d 569, 570 (7th Cir. 1936) (discussing various grades of gasoline by reference to their octane ratings); *Shell Petroleum Corp. v. Victor Gasoline Co.*, 84 F.2d 676 (10th Cir. 1936) (noting how different gasoline grades are delineated according to octane levels); *Texaco, Inc. v. Ingram Barge Co.*, 423 F. Supp. 676 (E.D. Mo. 1976) (referencing grades in terms of octane levels).[4] Thus, while the Complaint may read "grade" or "brand," it means "octane rating."

Second, in conducting a preemption analysis, a court is not required to accept a plaintiff's artful pleading when it is clear from the totality of her allegations that her claim falls within a preempted area. *See Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310-11 (6th Cir. 2009) (putting aside the plaintiff's "artful pleading" and finding that the Securities Litigation Uniform Standards Act ("SLUSA") preempted his state law claims); *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005) (looking at the substance of plaintiff's argument—rather than his "artful pleading"—in determining that ERISA preempted his state law claim); *Dudek v. Prudential Secs., Inc.*, 295 F.3d 875, 879-80 (8th Cir. 2002) (finding preemption under SLUSA despite plaintiff's artful pleading). Indeed, preemption analysis often requires the court to look at the essence, or "gravamen," of a plaintiff's complaint to determine whether federal law preempts the state law claim. *See Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1268 (2012) (looking at the "gravamen" of the plaintiffs' complaint in analyzing whether it was impliedly preempted under federal law); *Altria Grp., Inc.*, 555 U.S. at 81 (discussing how the Supreme Court in *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) found preemption based on the

---

[4] In her briefing, Plaintiff even implies that a gasoline's grade equates to its octane rating. *See* Doc. 75 at 17 n.12 ("In his briefing, [Alvarez] proposed the following corrective signage: 'This fuel dispenser is incapable of providing 100% of the *grade of gasoline* you have selected....' In relation to his octane-orientated claim, this language *clearly addresses octane issues*.") (emphasis added). Through this argument, Plaintiff suggests that the *Alvarez* plaintiffs' reference to gasoline grades in their request for relief clearly refers octane. The only way to reach this conclusion is for the Plaintiff to assume that octane is synonymous with a gasoline's grade.

"gravamen" of plaintiff's complaint).

Despite Plaintiff's argument that her complaint "makes no explicit or *implicit* allegations about Defendants' octane signage," Doc. 75 at 7 (emphasis added), the totality of her allegations suggest she is attempting to impose octane disclosure requirements. The Complaint alleges "Defendants fail to warn and/or advise Secondary Consumers that they are receiving a certain amount of lower grade gasoline although they are paying for that gasoline at a higher grade rate." Doc. 1-1 at 10. The Complaint also alleges that "Defendants further deceived Secondary Customers with false and misleading advertising regarding the quantity and brand of higher grades of gasoline when purchased immediately following purchasers of a lower grade of gasoline at their 'single hose blender pumps.'" *Id*. at 10-11. Similarly, the Complaint states that "[t]hrough advertising and selling at the point of sale, the Defendants have perpetrated the practice of inaccurately representing the brand and quantity of higher grade gasoline being purchased by Secondary Consumers…." *Id*. at 15. Finally, to rectify these alleged issues, Plaintiff requests "an Order suspending all misrepresentations by all Defendants regarding the brand and quantity of the higher grade gasoline…." *Id.* at 16. Thus, notwithstanding Plaintiff's careful avoidance of the word "octane," the essence of her allegations and request for relief demonstrate that this lawsuit is related to octane disclosures.

To avoid this conclusion, Plaintiff analogizes her claim to the FAL claim in *VP Racing*. In that case, the district court held that the FAL claim was not preempted because "it is not *the act* of certifying or displaying the octane level that Plaintiff complains about. Rather it is the act of *intentionally* misrepresenting the octane level that Plaintiff takes issue [with]." *VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1082 (emphasis in orginal). Plaintiff contends that, like the FAL claim in *VP Racing*, her MMPA claim only applies to the act of falsely advertising or misrepresenting the brand and quantity of the gasoline grade sold; it does not challenge the

certification and display of the gasoline's octane rating. Doc. 75 at 10-11.

This argument is not persuasive because *VP Racing* is simply not analogous. In *VP Racing*, the plaintiff's FAL claim addressed the defendant's misuse of a gasoline's trade name to intentionally deceive consumers. 673 F. Supp. 2d at 1077. The defendant marketed its product as "Sunoco's 260 GT-100 Octane," when, in fact, the product actually contained a 97 octane rating. *VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1077. Under § 2822(g) of the PMPA, trade named or trademarked gasoline is explicitly exempted from the octane labeling requirements. In fact, as the district court noted, this *exact* claim is exempted from preemption. *Id.* at 1083 ("Such would be the case if the trademark to be utilized were '100 Octane' and this trademark were to be utilized to identify automotive gasoline with an octane rating of less than 100 under the statutory definition.").

But here Plaintiff is not challenging the misuse of a trade name. Rather, her bedrock allegation is that "[t]hrough advertising and selling *at the point of sale*, the Defendants have perpetrated the practice of inaccurately representing the *brand* and quantity of *higher grade gasoline* being purchased by Secondary Consumer…." Doc. 1-1 at 15 (emphasis added). The only advertising and misrepresentations Plaintiff can be referring to "at the point of sale" are representations about the "grades" of gasoline, that is, their octane rating. *See Alvarez*, 2009 WL 5552497, at *5 ("First, the octane labels are the only 'advertisements' Plaintiffs could be challenging, as the faces of the dispensers are the only places on the pump where retailers are permitted to disclose to consumers the gasoline octane grades."). Additionally, Plaintiff concedes that her MMPA claim does not fall within the 2822(g) exception for trade names. Doc. 75 at 17. Thus, unlike the false advertising claim in *VP Racing*, Plaintiff's MMPA claim directly relates to the octane labeling.

## 2. The PMPA Plaintiff's MMPA claim would impose octane disclosure requirements that are not "the same as" the disclosure requirements under the PMPA.

Because the PMPA does not preempt a state law whose requirements are "the same as" the PMPA's, *see* 15 U.S.C. § 2824(a), the Court must now decide whether Plaintiff's MMPA claim would impose octane disclosure requirements different from those under the PMPA. According to Plaintiff, success on her MMPA claim would not "creat[e] any additional or new requirements regarding the PMPA's octane disclosure." Doc. 75 at 9. The Court disagrees.

Since Plaintiff's MMPA claim requests relief similar to that requested in *Alvarez*, the Court finds that Plaintiff's MMPA claim would create requirements different from those under the PMPA. The material allegations in *Alvarez* concerning the FAL claim almost mirror the material MMPA allegations in the Complaint, including the alleged residual fuel problem, the failure to provide the full amount of fuel at the selected "grade," and the false or misleading "advertising" at the point of sale. *Compare* Doc. 1-1 at 4, 10, 15, *with* Complaint, *Alvarez v. Chevron Corp.*, 09-cv-03343-GHK-CW, Doc. 1 at 3, 7, 8, 22 (C.D. Cal. May 5, 2009). In *Alvarez*, among other relief for its FAL claim, the plaintiffs requested that "Defendants prominently disclose on all single-nozzle fuel dispenser not capable of dispensing 100 percent of the fuel grade contracted for, a notice to that effect…." Complaint, *Alvarez v. Chevron Corp.*, 09-cv-03343-GHK-CW, Doc. 1 at 23 (C.D. Cal. May 5, 2009). Similarly, here, Plaintiff requests an "Order suspending all misrepresentations by all Defendants regarding the brand and quantity of the higher grade of gasoline." Doc. 1-1 at 16. Both requests seek to address defendants' representations concerning grades of gasoline, and thus, its octane ratings. Although Plaintiff argues she is not alleging that Defendants have "false advertisements or make false representations of their octane ratings," she seeks relief to correct such false and misleading representations. Accordingly, Plaintiff's claim here is materially indistinguishable from that in *Alvarez*.

13

Nonetheless, Plaintiff attempts to distinguish *Alvarez* by highlighting the differences in degree between the requests for relief in the respective cases. Plaintiff contends that the plaintiffs in *Alvarez* explicitly requested an additional disclosure, whereas she has only requested the court enjoin the misrepresentations.

Although Plaintiff does not explicitly request an additional disclosure, such action is clearly implied in the Complaint. Throughout the Complaint, Plaintiff refers to the Defendants' failure to warn about the pump providing lower grade gasoline at a higher grade rate and the false and misleading advertising at the point of sale. Doc. 1-1 at 5, 10, 15. In her request for relief, Plaintiff requests the Court suspend these misrepresentations. *Id.* at 16. The only feasible ways to suspend these "misrepresentations" would be to order Defendants to either place corrective signage on the pump akin to the *Alvarez* disclosure or to remove the grade/octane disclosures altogether.[5] Both options, however, would be different from the disclosure requirements under the PMPA because the former would be stricter than the PMPA requirements while the latter would be more lenient. Thus, when Plaintiff's request for relief is interpreted in light of the Complaint's "gravamen," the Court finds that her MMPA claim would impose requirements on Defendants which are not the same as those under the PMPA.

---

[5] In a footnote in her recent briefing, Plaintiff contends that the injunctive relief may take a myriad of forms unrelated to disclosures on the pump, including requiring Defendants to implement different pump types that would eliminate the residual fuel problem or "recalibrate" the existing pumps to alleviate the misrepresentations. Doc. 75 at 17 n.13. The Court finds this argument unpersuasive. First, in exercising its equity jurisdiction, the Court would not order Defendants to replace all of its current gasoline pumps throughout Missouri, because such a requirement would likely fail a balancing of the hardships test. *See Newmark v. Vogelsang*, 915 S.W.2d 337, 339 (Mo. Ct. App. 1996) ("[E]quity will not usually interfere in trivial matters, or where the injunction will work little benefit to plaintiff and cause great hardship to defendant."). Second, the Court would not require recalibration of the gasoline pumps because such an action could violate other state laws. By "recalibration," the Court assumes Plaintiff means adjusting the price for the first portion of the gasoline or in some way expelling the residual lower grade gasoline from the previous user. Both of these are options are prohibited under Missouri regulations. *See* Mo. Code Regs. Ann. Tit. 2, § 90.30.080(4) (adopting NIST Handbook 44 requirements as the governing standard for measuring devices used in the sale of petroleum in Missouri); NIST Handbook 44 § 1.6.5.4, Doc. 13-1 at 13 ("the selection of the unit price shall be made prior to delivery using controls on the device or other customer-active controls. A system shall not permit a change to the unit price during delivery of [the] product."); NIST Handbook 44 §§ 3.1, 3.3, 3.7, Doc. 13-1 at 18-19 (requiring that a residual amount of fuel must remain in the gasoline hose at all times).

Plaintiff again attempts to avoid preemption by analogizing her claims to those in *VP Racing*. In that case, the district court concluded that the UCL claim would impose labeling requirements that were "the same as" those under the PMPA, and, thus, the PMPA did not preempt it. *VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1082-83. Plaintiff contends, like the plaintiff in *VP Racing*, she "is not requesting that more information be required, only that Defendants truthfully state and charge customers for the quantity of branded gas being delivered." Doc. 75 at 11.

This argument is unavailing. In challenging the defendant's blatant misuse of a trade name, the *VP Racing* plaintiff's UCL claim essentially enforced the preexisting PMPA rather than imposing additional requirements. *See* 673 F. Supp. 2d at 1082 ("Because the UCL 'adopts' the underlying law for purposes of the action, then the predicate law here, PMPA, would be 'the same as' the PMPA."). On the contrary, here, Plaintiff's MMPA allegations in conjunction with her request for relief require corrective measures that are not the same as those under the PMPA. For these reasons, the Court finds that Plaintiff's reliance on *VP Racing*'s UCL-related holding is misplaced.

Finally, Plaintiff argues that the 1992 PMPA amendments evince Congress' intent to give the states broader authority in octane disclosure regulation. Citing *VP Racing*, Plaintiff contends that in 1992 Congress added 15 U.S.C. § 2824(b) in order to allow the states to enforce the PMPA requirements. *See VP Racing Fuels, Inc.*, 673 F. Supp. 2d at 1080. Plaintiff implies that this change to a dual form of enforcement somehow cleared the way for state law claims such as hers.

In making this argument, Plaintiff misconstrues the significance of these amendments. The addition of subsection (b) to the express preemption provision did not create the sea change Plaintiff suggests. Although Congress included this subsection to expand state enforcement, it

15

explicitly limited the enforcement powers "to those permitted by subsection (a) of this section." 15 U.S.C. § 2824(b). Subsection (a) only allows state regulations that are "the same as" the requirements under the PMPA. *Id*. § 2824(a). From this, it is apparent that Congress' 1992 amendments only explicitly empowered the states to enforce the preexisting PMPA requirements. It did not, however, authorize the states to augment the federal standards. And as discussed previously, this is exactly what Plaintiff's MMPA claim purports to do.

Because Plaintiff's requested injunctive relief would "have the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations," the PMPA preempts Plaintiff's claim. *Alvarez*, 656 F.3d at 935.

**D. Plaintiff's claim would be preempted even if she only requested monetary relief.**

Even if Plaintiff solely requested monetary relief, Plaintiff's MMPA claim would still be preempted. State law causes of action for damages are preempted to the extent that they create state law requirements inconsistent with federal law. *See, e.g., Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008) (noting a state common law cause of action for damages can be preempted by a federal statute because it is premised upon a state-law obligation) (quoting *Cipollone*, 505 U.S. at 522).

That is the case here. In order for Plaintiff's MMPA to succeed, there would have to be a finding that Defendants either failed to disclose the residual fuel problem or that the labeling on the pump misrepresented the grade/octane of the selected higher grade gasoline. And the judgment stemming from such a finding would have the practical effect of imposing a state law requirement to warn consumers that the fuel pumps are incapable of dispensing the exact fuel amount at the designated higher grade/octane level. *See Brooks v. Howmedica, Inc.*, 273 F.3d 785, 797 (8th Cir. 2001) (suggesting that the potential of adverse judgments incentivizes companies to provide superfluous warnings to avoid liability). Such a requirement would be inconsistent with the

federal law governing octane disclosures. Accordingly, the Court would find Plaintiff's claims preempted even in absence of her request for injunctive relief.[6]

## II. The PMPA impliedly preempts Plaintiff's MMPA claim.

In its second argument for judgment on the pleadings, Defendants contend that Plaintiff's MMPA claim is impliedly preempted because her claim would impose state law labeling requirements which impede the PMPA's purpose of enacting a uniform system of octane disclosures. The Court agrees.[7]

Even in the absence of an express preemption provision, a federal law may impliedly preempt state law. *Altria Grp., Inc.*, 555 U.S. at 76. Implied preemption occurs when either "the scope of the statue indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Id.* at 76-77. The latter form of implied preemption, commonly referred to as "conflict preemption," "occurs when compliance with both federal and state regulations is impossible,…or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillman v. Maretta*, 133 S. Ct. 1943, 1950 (2013) (internal quotation marks and citations omitted). Under the latter form of conflict preemption, the Court "must first ascertain the nature of the federal interest" to determine whether the state law impedes congressional

---

[6] The Court would reach the same conclusion even if it allowed Plaintiff to split her requests for relief. Following the initial briefing, the Court requested the parties brief "whether Plaintiff's MMPA claim could be preempted only in so far as it requests injunctive relief, but not to the extent it seeks injunctive relief." Doc. 73 at 2. Although the parties note that a federal law may preempt either a state law action for damages or injunctive relief, neither party provided the Court with a case that directly addresses the posed inquiry. *See* Defendants' Supplemental Brief, Doc. 74 at 9 ("Defendants are aware of no decision that has held a plaintiff's claim to be preempted only to the extent it seeks injunctive relief."). Nor was the Court able to find an opinion that *definitively* resolves the issue. *Cf. Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 225 (discussing how the Illinois Supreme Court found that the state law claims were preempted in so far as the claims sought injunctive relief, but allowed the actions for damages on these claims to continue). Because the Court finds that Plaintiff's MMPA claim for monetary relief is also expressly preempted, the Court declines to address this issue.

[7] Defendants also contend that the requirements imposed as a result of Plaintiff's MMPA claims are preempted under the doctrine of "impossibility" preemption. Because the Court finds that Plaintiff's MMPA claim is preempted on the other grounds, it does not address this argument.

purposes and objectives. *Id.*

The plain language and structure of the PMPA and AFR regulations clearly demonstrate that its primary purpose is to create a uniform and simplistic system of octane disclosures to ensure that consumers have the necessary information to ensure efficient and effective petroleum purchases. Section 2822(c) requires that "automotive fuel retailer[s] shall display in a clear and conspicuous manner, at the point of sale to ultimate purchasers of automotive fuel, the automotive fuel rating of such automotive fuel…." To ensure that retailers comply with this requirement, Congress directed the FTC to promulgate regulations creating "a *uniform* method of displaying the automotive fuel rating of automotive fuel at the point of sale to ultimate purchasers." 15 U.S.C. § 2823(c)(1)(B) (emphasis added). The FTC in turn promulgated extensive regulations specifying the size, color, font, and location of automotive fuel labels. 16 C.F.R. § 306.12. These detailed regulations not only provide uniformity throughout the country, but also convey the necessary information in an easily-understood format.

As discussed previously, Plaintiff's PMPA claim would either force Defendants to make additional disclosures regarding the pump's inability to dispense the full amount of the selected grade or to remove the octane disclosures altogether. Either option interferes with Congress' objective of presenting information regarding octane disclosures in an easily-understood format. The extraneous disclosure, for example, could lead to consumer confusion. Although octane labeling mandated by federal law clearly states that when a consumer selects a given grade of gasoline he or she will receive at least the level of octane disclosed on the label, the addition disclosure proposed by Plaintiff suggests that this is not true. This contradictory information could cause consumer confusion.

Likewise, an additional disclosure applying only to the gas stations involved in this lawsuit would unquestionably frustrate Congress' intent to create a uniform system of regulation

governing octane disclosures. Imposing different labeling requirements on Defendants would result in two sets of standards, one for Defendants and other retail gas stations in Missouri using single-hose blender gasoline pumps, and one for retail gas stations using single-hose blender gasoline pumps operating in the other forty-nine states. This would clearly frustrate the primary purpose of the PMPA. Consequently, the Court holds that the PMPA impliedly preempts Plaintiff's MMPA claim.

### III.      Missouri law provides Defendants with a safe harbor from liability.

Finally, the Court holds that even if Plaintiff's MMPA claim is not preempted under federal law, Missouri state law precludes Plaintiff's MMPA claim. First, to the extent that Plaintiff's MMPA claim attempts to impose specifications upon the sale of fuel, Missouri law expressly preempts it. *See* Mo. Rev. Stat. § 414.022 ("The State of Missouri hereby preempts the field of regulating the inspection of and providing specifications for any substance regulation by sections 414.102 to 414.152…."); *id.* § 414.112(1) ("No person shall store, sell, expose for sale, or offer for sale, gasoline…so as to deceive or tend to deceive the purchaser as to the nature, quality, and identity of the product so sold or offered for sale, or under any name whatsoever except the true trade name thereof.").

Second, to the extent that Plaintiff's MMPA claim challenges the use of single-hose blender pumps as an unfair practice, Missouri law provides a safe harbor from liability because it expressly allows—and extensively regulates—this type of gasoline pump as a permissible measuring device for gasoline dispensing. *See* Mo. Rev. Stat. § 414.012, *et. seq.* (establishing an extensive regulatory scheme for gasoline dispensing devices); *see also* Mo. Code Regs. Ann. Tit. 2, § 90.30.080(4) (adopting NIST Handbook 44 requirements as the governing standard for measuring devices used in the sale of petroleum in Missouri); NIST Handbook 44 § 1.6.5.4, Doc. 13-1 at 13 ("the selection of the unit price shall be made prior to delivery using controls on the device or

other customer-active controls. A system shall not permit a change to the unit price during delivery of [the] product."); NIST Handbook 44 §§ 3.1, 3.3, 3.7, Doc. 13-1 at 18-19 (requiring that a residual amount of fuel must remain in the gasoline hose at all times). Accordingly, Plaintiff may not use the MMPA to impose liability for conduct that is permitted and highly regulated under Missouri law. *See Alvarez*, 656 F.3d at 933-34 (holding that the district court properly dismissed the plaintiffs' UCL and CLRA claims because the applicable California regulations regarding single-hose blender pumps provided a safe harbor from liability).

## Conclusion

Because the PMPA expressly and impliedly preempts Plaintiff's MMPA claim, the Court GRANTS Defendants judgment on the pleadings.

**IT IS SO ORDERED.**

Date: <u>March 28, 2014</u>                    <u>/s/ Greg Kays                    </u>
                                               GREG KAYS, CHIEF JUDGE
                                               UNITED STATES DISTRICT COURT